Filed 7/1/21  In re P.J. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re P.J., a Person Coming Under the Juvenile Court Law. | B309332 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP04634A) |
| Plaintiff and Respondent, | |
| v. | |
| S.L., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Debra R. Archuleta, Judge.  Affirmed.

Jacob I. Olsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

A mother shook her young child because he cried.  The mother then threatened the father with a knife when he took the child from her arms.  There was other family violence.  The juvenile court assumed jurisdiction over the boy and placed him with his father.  The mother challenges only her case plan.  She says it is too onerous.  We affirm.  Statutory references are to the Welfare and Institutions Code.

I

A girl called 911 at 3:20 in the morning one September day in 2020.  The girl said her stepmother—Mother—threatened her father with a knife after he found Mother shaking the child.  The child was 23 months old.  The girl is the child's half sister.

Father recounted the incident.  The child awoke crying.  He and Mother gave their son a bottle and tried to soothe him, but the child kept crying.  Mother grabbed the child by the shoulders and began shaking him.  She shook him for about 10 seconds while screaming for him to stop crying and go back to sleep.  Father pulled the child away.  Mother scratched Father's back, went to the kitchen, and returned with a knife.  She told Father she would stab him if he did not give back the child.  Father convinced Mother to surrender the knife.  He put the child in the living room.  The boy vomited three times.

Police arrested Mother.  The child went to a hospital.  A doctor reported no signs of trauma and testing revealed no findings of concern.

2

Father did not know why Mother "snapped." He said "this has happened in the past"—Mother previously had been violent and he usually bears the brunt. In the past Mother also had wanted to kill herself.

Reports from the responding officer and from a nurse matched Father's account of the incident, as did the officer's body camera footage.

The half sister also corroborated Father's report. She witnessed the incident. She described to the officer how Mother asked Father, while holding the knife, " 'Do you want me to stab you' "?

There also was evidence, however, the half sister had been inconsistent: she told the investigating social worker she heard Father and Mother arguing from her room and then found the child crying while the parents were outside, implying she did not witness the violence.

Mother said the half sister does not like her, which was why "she went along with the father's statement." Mother claimed Father was telling this story about her to get custody of the child, as he had threatened. She believed he was retaliating because she had taken the child away from home for a month. Mother denied shaking or hitting her son and denied pulling a knife on Father or scratching him. She was willing to take a lie detector test to prove she did not hurt the child; he is her only child and the love of her life.

Mother admitted getting upset with Father when he would ignore her. She denied all domestic violence and mental health issues.

Mother repeatedly expressed her willingness to participate in any services needed to reunify with her son. She said, " 'I am willing to do what I need to have my child back in my care.' "

Mother later asked the social worker, " 'So what happens if you find evidence that I did this?' " The social worker said case issues need to be addressed through services. She noted Father's statement had been consistent.

After this episode, Father got an emergency protection order and then a temporary restraining order against Mother. He initially expressed uncertainty about whether to seek a permanent restraining order but then requested and received one.

## II

The Department of Children and Family Services filed a dependency petition in September 2020. The petition alleged the child was at risk due to being physically abused by Mother, due to domestic violence between the parents in the child's presence, and due to mother's history of mental and emotional problems.

The petition included allegations against Father, which we omit as irrelevant to this appeal.

At the detention hearing, Mother's counsel proposed a safety plan that "would include immediate involvement in parenting, individual counseling, anger management course." Counsel also relayed that Mother intended to do "anything the court asks of her."

At the jurisdictional and dispositional hearing, the Department submitted on the mental health count but asked the court to address this count in the case plan. The child's counsel asked the court to dismiss this count. Mother argued for dismissal of all counts.

4

The juvenile court sustained some but not all allegations in the petition. It dismissed the mental health count against Mother. It declared the child a dependent, placed him in Father's home, and ordered monitored visitation for Mother.

The court found by clear and convincing evidence that returning the child to Mother's care would endanger the child, and there were no reasonable means by which his health could be protected without removal.

Mother's counsel objected to the proposed case plan, which did not include an anger management component, as follows: "Your honor, I believe that the Department is asking for mother to complete a domestic violence program. I think, if anything, an anger management program might be more appropriate. But, otherwise, just note mother's general objections to the case plan."

The court then adopted a case plan requiring Mother to participate in both a domestic violence program and an anger management program, parenting classes, individual counseling, and mental health counseling, including a psychological assessment.

In requiring both domestic violence and anger management classes, the court commented: "[I]t seems to me that, based on the review of the disposition report and the case file, there [are] a lot of underlying issues here that need to be addressed, and I think that it is better to have too much therapy and counseling, as opposed to too little, especially given the age of this young minor child."

Mother appealed, arguing the case plan is overly burdensome and the court abused its discretion in ordering services unrelated to her family's needs and preservation. She concedes some services were warranted, but not both anger

management and domestic violence classes.  Mother also argues the court's dismissal of the mental health count shows there was insufficient evidence to justify the mental health services.

III

The court did not abuse its discretion by ordering this case plan.

Once a child becomes a dependent of the juvenile court, the court may make reasonable orders to further the care and support of the child.  (§ 362, subd. (a).)  The court has broad discretion to fashion a disposition order for the child's well-being.  (*In re Corrine W.* (2009) 45 Cal.4th 522, 532.)

We review these orders for an abuse of discretion.  (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1071 (*In re D.P.*).)

Services ordered for a parent should be tailored to the family and should aim to remedy the conditions that led to the dependency.  (§ 362, subd. (d); *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006 (*In re Christopher*).)  In determining an appropriate program, the sustained petition is a guide and not a shackle.  The court may consider the evidence as a whole and craft a plan to address parental deficiencies that hinder the reunification process, even if the sustained petition did not detail these deficiencies.  (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311 (*In re Briana*); *In re Christopher*, at p. 1008.)

Juvenile courts should be mindful of the burdens their orders impose, but "the paramount concern always must be the child's best interests, and we cannot reverse a disposition order reasonably fashioned to eliminate the conditions that led to dependency jurisdiction, no matter how burdensome its requirements may seem from the parent's perspective."  (*In re D.P.*, *supra*, 44 Cal.App.5th at pp. 1071–1072.)

6

The juvenile court reasonably exercised its discretion in ordering services to advance this child's best interests and to address the problems giving rise to this case. Mother suggested most of these services at the detention hearing. She was the one to raise the issue of anger management at the disposition hearing. She expressed her commitment to do what the court asked. On appeal, Mother concedes she "could certainly find some benefit through all of these services."

In addition, there was an evidentiary basis for each challenged component of the case plan.

There was evidence of other domestic violence between Mother and Father apart from the September 2020 incident. While Mother denied any violence, Father said there was violence in 2018. According to the Department's file for the 2018 matter, Mother reported Father punched her in the chest while she was carrying the child.

Two years later, the Department concluded the family apparently "has experienced ongoing domestic violence for at least two years" and "Mother doesn't appear to have the insight on whether she and father are in an unhealthy relationship and how it affects the child."

According to Father, Mother "gets mad and snaps." She screams, yells, and gets really nervous at times. " 'She's never really physical just emotional. She shakes. We've had this problem in the past.' " Father said his other children are scared of Mother, and he does not feel safe with her.

The half sister also reported seeing Mother "snap" before. The girl said Mother " 'always acts like this' " and has tried to hurt the child and Father; but Father dodges her.

There was evidence Mother shook the child other times, including when the child was a few months old.

And there was other evidence Mother had mental health issues.  After the birth of their son, Father noticed "something about her changed"—she had no mental health issues before this.  He believed she became depressed.  After the 2018 violence, Mother said she wanted to kill herself.

Father said Mother's ex had tried to run her over and had rammed her with his car.  Father did not think Mother had ever received mental health services.

It was reasonable to conclude a convergence of issues triggered the explosive September 2020 incident.  So too was it reasonable to order a range of services to address this convergence.  The court struck the mental health count, but it remained reasonable to decide Mother's mental health might be affecting her ability to reunify safely with her child and to take action to correct any untreated mental health condition.

The juvenile court acted within its discretion by ordering Mother's case plan.  (Cf. *In re Briana*, *supra*, 236 Cal.App.4th at pp. 307, 311–312 [while no evidence supported sexual abuse allegations against father, order requiring sexual abuse counseling had evidentiary basis because father was a registered sex offender and violated probation conditions regarding contact with minors]; *In re Christopher*, *supra*, 50 Cal.App.4th at pp. 1005, 1007–1008 [order for alcohol or drug testing was proper, even though substance abuse allegation stricken from petition, where father had multiple arrests for driving under the influence and had tested positive for methamphetamine].)

We note the Department's appellate brief interprets the case plan requirement to participate in mental health counseling

8

and individual counseling as a single requirement and urges us to view the plan in this way. The Department's acknowledgment is binding upon it as this case proceeds; its position before the appellate court must be consistent with its position in the juvenile court.

We need not and do not reach the Department's arguments regarding forfeiture.

## DISPOSITION

We affirm.


WILEY, J.


We concur:



GRIMES, Acting P. J.



OHTA, J.*

_____

*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.